IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.

KENNETH REEL and EMILY REEL,
individually and as the representatives
of a class of similarly-situated persons,

          Plaintiff,

v.

BILLY MCFARLAND, an individual;
JEFFREY ATKINS a/k/a/ JA RULE, an
individual; FYRE MEDIA, INC., a
Delaware corporation; FYRE
FESTIVAL, LLC, a Delaware limited
liability company; 42WEST, LLC,
a Delaware limited liability company;
MATTE PROJECTS, LLC a New York
limited liability company; DOES 1-50,

          Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Kenneth Reel and Emily Reel, individually and as the representatives of a class

of similarly-situated persons, and allege the following:

### NATURE OF THE ACTION

1.    This is an action for fraudulent misrepresentation, negligent misrepresentation,

fraud in the inducement, breach of contract, and violation of various state consumer protection

laws, which arises out of Defendants' false and misleading representations and promotion of a

purportedly exclusive event known as "Fyre Festival."

2.    Defendants falsely promoted Fyre Festival as a high-end, exclusive music festival

on a private island featuring "the best in food, art music and adventure."  Defendants went to

1

great lengths to reinforce this image by procuring endorsements from numerous celebrities and visually representing lavish accommodations.  In short, Defendants sold tickets for a music festival of unparalleled luxury.  In reality, Fyre Festival was the opposite. The event fell woefully short of what was advertised in virtually every way, in what news outlets have described as a "slow-motion fiasco."

3.       Instead of world-class cuisine and entertainment, concert goers found themselves without adequate food, water, shelter, and basic medical care.  Still others in route to the event found themselves stranded in Miami, Florida unsure of how to proceed or of what was occurring on the island.

4.       The calamity was further complicated by the fact that Fyre Festival was organized as a cashless event, whereby attendees uploaded funds to an electronic wristband for use at the festival instead of cash.  As a result, many attendees seeking to flee the event were unable to secure basic transportation from local taxis or busses, which accept only cash.  To make matters worse, these uploaded funds have not yet been returned to ticket purchasers.

5.       Defendants have been aware for months that the festival was dangerously under-prepared and under-equipped.  Yet, they continued to promote the event and sell ticket packages anyway.

6.       In fact, as the festival dates were approaching, the Fyre Defendants began to inform performers and celebrities that the festival was ill-equipped and warned them not to attend—ticketholders were given no such courtesy.  Upon information and belief, the Fyre Defendants also informed the PR Defendants, yet the marketing persisted.

7.       As a result, thousands of ticketholders in route to the vacation of a lifetime found themselves stranded when the event was abruptly cancelled due to inadequate preparation.

2

8.      Not only did ticketholders shell out thousands of dollars to purchase tickets to the event, but in order to attend the event, they were required to make transportation arrangements to Miami, where festivalgoers would then board a flight to the purported private island in the Exumas.  Once the event was abruptly cancelled, ticketholders were left to fend for themselves.

9.      Plaintiffs bring this class action on behalf of all ticket purchasers defrauded and wronged by Defendants, and seek damages in excess of $5,000,000.00 on behalf of themselves and the class.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28, U.S.C. § 1332(d), because this is a class action in which: (1) various members of the proposed class are citizens of states different from where Defendants are citizens; and (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

11.      This Court also has supplemental jurisdiction over Plaintiff's state claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts and are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs and Class Members' claims occurred in the Southern District of Florida.   Miami was to be the "hub."  To attend the festival, all festival-goers were required to take a flight from Miami to the Bahamas.   These Miami-Bahamas flight arrangements were a part of the ticket packages purchased by the Plaintiffs and the Class. Further, because all flights to the Exumas, Bahamas originated from Miami, *ticket purchasers were required to make travel arrangements to Miami as a prerequisite to festival attendance*.

3

Further, while the event was supposed to take place in the Bahamas, the tickets actually list the location of the event at a Florida address:  Fyre Festival, 1 Ocean Drive, Fyre Cay FL, 33139.

13.     This Court possesses personal jurisdiction over Defendants pursuant to § 48.193(1)(a)(1),(2),(6) and (7), Fla. Stat. because defendants: (a) operated, conducted, engaged in, or carried on a business or business venture in Florida, (b) committed the tortious act of fraud in Florida, (c) caused injury to persons or property within Florida arising out of an act or omission by the Defendants outside this state and at or about the time of the injury, Defendants were engaged in solicitation or service activities within Florida.

14.     This Court also possess personal jurisdiction over Defendants pursuant to § 48.193(2), Fla. Stat. because Defendants are engaged in substantial and not isolated activity within Florida.

## PARTIES

15.     Plaintiff Kenneth Reel ("Kenneth") was a resident of Charlotte, North Carolina, and a citizen of the State of North Carolina at all time relevant to this action.

16.     Plaintiff Emily Reel ("Emily") was a resident of Charlotte, North Carolina, and a citizen of the State of North Carolina at all time relevant to this action.

17.     Upon information and belief, Defendant Billy McFarland ("McFarland") was a resident and citizen of the State of New York at all times relevant to this action.

18.     Upon information and belief, Defendant Jeffrey Atkins a/k/a Ja Rule ("Ja Rule') was a resident and citizen of the State of New York at all times relevant to this action.

19.     Defendant Fyre Media, Inc. ("Fyre Media") was a business entity incorporated under the laws of the State of Delaware at all times relevant to this action.

4

20.     Defendant Fyre Festival, LLC ("Fyre LLC") was a business entity incorporated under the laws of the State of Delaware at all times relevant to this action.

21.     Defendant 42West, LLC ("42West") was a business entity incorporated under the laws of the State of Delaware at all times relevant to this action.

22.     Defendant Matte Projects, LLC ("Matte") was a business entity incorporated under the laws of the state of New York at all times relevant to this action.

23.     The true names and capacities of Defendants sued as Does 1-50 are currently unknown to Plaintiffs.  Plaintiffs are informed and believe that the Doe Defendants are legally responsible in some way for the conduct alleged herein.  Upon ascertaining the Doe Defendants' identities, Plaintiffs will seek leave to amend the Complaint.

24.     Plaintiff is informed and believes that Defendants sold ticket packages, ranging in price from $1,200.00 to over $100,000.00, to thousands of Class Members. Upon information and belief, these Class Members are residents and citizens of numerous States and Countries.

## FACTUAL BACKGROUND

25.     Fyre Festival and the luxurious experience it professed to offer was widely advertised and promoted by Defendants through an extensive marketing campaign.

26.     Upon information and belief, Defendants McFarland, Ja Rule and Fyre Media, and Fyre LLC (collectively, "Fyre Defendants") hired Defendants 42West and Matte (collectively, "PR Defendants") to coordinate the Fyre Festival's marketing and advertising campaign.  As explained in more detail below, the marketing campaign made numerous false and misleading representations about Fyre Festival.

27.     As set forth more fully in the Pitch Deck provided to Fyre Festival investors, attached hereto as Exhibit "A," to "ignite" Fyre Festival, Defendants "compiled 400 of the most

influential personalities globally to launch a coordinated influencer marketing campaign." These influential personalities were dubbed "Fyre Starters."

28.    The Fyre Starters included notable personalities such as Kendall Jenner, Emily Ratajkowski, and Hailey Baldwin, as well as many other well-known social media icons—all of whom have social media accounts with extensive followings.

29.    To announce the festival, the Fyre Starters posted to their social media accounts an ambiguous orange tile. According to the Pitch Deck, this advertisement reached over 300 million people in 24 hours.

30.    Other posts soon followed sensationalizing and promoting Fyre Festival as an exciting, extravagant once-in-a-lifetime event that would occur over the course of two weekends (April 28-30, 2017 and May 5-7, 2017).

31.    For example, as part of the vast influencer marketing campaign, Defendants partnered with Kendall Jenner to announce the festival's first headliners, and paid her $250,000. Within five days, she amassed approximately 6 million unique impressions, leading to an exponential leap in website views and ticket purchases. The post featured models in bikinis walking along an idyllic white sand beach, and the caption of the post encouraged followers to "Get tix now" and to use Jenner's "promo code" for "VIP access for [Jenner's] followers."

32.    The advertisements from the vast influencer marketing campaign were widespread and directed toward young adults in all 50 states, including Florida.

33.    Almost all of the 400 influencers who shared the promotional videos and photos never noted the posts were actually advertisements—despite the fact that the Federal Trade Commission requires social media users to clearly and conspicuously disclose their relationships to brands.

6

34.     On December 20, 2016, Plaintiff, Kenneth observed one such post on Facebook advertising a music festival to be held in the Exumas, Bahamas.

35.     Since both Plaintiffs have travelled to Exuma every year for the past six years, they were ecstatic about the opportunity to attend a music festival on the island, particularly one as elaborate as the way in which the Fyre Festival was being marketed.

36.     Hence, the Plaintiffs purchased tickets for the event (to be held at a private island in the Exumas) based not only upon the marketing being conducted by all of the Defendants but also upon the representations set forth in the FAQ section of Defendants' website. A copy of the FAQ section is attached hereto as Exhibit "B."

37.     As set forth in the attached FAQ, the following representations indicated that the festival would comprise:

- a culinary experience catered by celebrity chefs;

- luxury eco-friendly domes and villas that will "feel just like a hotel" with the "comforts of home," a depiction of which is attached hereto as Exhibit "C";

- musical bands that will be performing day and night; with an "all star cast of performers, models, influencers, and thought leaders attending."

38.      Defendants also provided a video advertisement that further underscored these representations.  The video can be found at: https://www.youtube.com/watch?v=kkovBKfcSJ8

39.     Specifically, the video advertisement represented that the experience would entail "[t]he best in food, art, music and adventure."

40.     Plaintiff, Kenneth later realized that the person swimming in blue waters could not have been at the Exumas, as Chloe Gordon, an employee of Defendants, stated that upon

landing at the island, she was specifically "warned not to go near [the water] because of a rampant shark problem."

41.     Nevertheless, based upon the marketing, these advertisements and the countless representations made by all Defendants, Plaintiffs booked the two bed "duo" with a VIP upgrade for $4,599.84.  Copies of Plaintiffs' tickets are attached hereto as Exhibit "D."  Additionally, since the event was a "cashless" event, Plaintiffs had to deposit $600.00 spending money onto an Account operated and maintained by the Defendants.

42.     As stated in the FAQ and the tickets Plaintiffs purchased,  Plaintiffs were required to first arrive in Miami before being transported to the island.  In fact, the FAQ specifically states that getting to Miami will be "your only responsibility this weekend."

43.     Plaintiffs lived in Charlotte, North Carolina, and therefore needed to book a flight and lodging arrangements to stay in Miami before and after visiting the island.

44.     Approximately two weeks after the booking, Plaintiffs began receiving emails about the artists that would be performing, and that Plaintiffs would be contacted in the next two weeks to coordinate the private flight to the private island from Miami.

45.      On Feb 10, 2017, Plaintiff, Kenneth reached out to the Fyre Defendants regarding the flights.

46.     There were numerous excuses provided as to why this information was not ready (i.e., issues with customs, emails going to the wrong place, etc.).   Nevertheless, the Fyre Defendants continued to assure Plaintiffs that all was going well and as planned.

47.     On March 28, 2017, Plaintiffs finally received an email to book their flights from Miami to Exuma.

48.     At this time, both in emails and on the Fyre Defendants' webpage, changes regarding the services began to appear.

49.     No longer were the terms "private flights" to be found as they were replaced with the words "complimentary round trip ticket."  News articles were also appearing that the festival may be in financial trouble; however, all Defendants kept pumping a positive spin in marketing and public relations.

50.     None of the Defendants provided any indication to any ticketholders or prospective purchasers that the festival was not proceeding as planned or was behind in its development.  In reality, by this point, the Fyre Defendants had not even remotely proceeded to a level of what would be considered sufficient progress to attain what was advertised.  The PR Defendants, upon information and belief, were fully aware that the festival was not ready for its patrons.

51.     There had been no infrastructure in place for electricity (let alone promised wifi) or sanitation.

52.     The luxury domes were not being built, and instead were being replaced by tents.

53.     The celebrity chefs had notified the Fyre Defendants they would not be appearing, and thus food was going to be served out of makeshift tents and included such items as bread and cheese sandwiches, side-salads, and pasta; clearly not the culinary experience that had been marketed by the PR Defendants and the Fyre Defendants.

54.     Bands had notified the Fyre Defendants that they would not be appearing due to the lack of progress, none of which was reported publicly by any of the Defendants despite all Defendants' knowledge of these facts.  The bands' decisions were likely based upon the fact that the Fyre Defendants had not even secured a stage for the concert.

9

55.     There were also promises by all Defendants of security with local law enforcement, private contractors, and even the Bahamian army; none of which had been secured. In fact, there were ultimately reports of numerous festival-goers being mugged, robbed, and otherwise terrorized by locals who were otherwise met with no resistance.

56.     Defendants advised the island would be "honoring American Standards for medical safety," and a "medical tent on the island with professional medical providers."  This could not be further from the truth, other than the fact that there was a sign for First Aid that was located inside a garage with only boxes, chairs and a water cooler.  No medical team was present.

57.      Nevertheless, despite all of these deficiencies, Defendants failed to notify Plaintiffs, or any other purchasers, that there were issues with the festival moving forward.

58.     In fact, Defendant Ja Rule was, or should have been well aware of these problems.  In March of 2017, Ja Rule arrived for a "site visit."  However most of his time was spent on a yacht based upon his Instagram posts.  And upon his return from this "site visit", he no doubt shared whatever he saw (or didn't see) with the other Defendants.  The marketing kept pushing forward to generate more sales and more investors.

59.     Meanwhile, the event planners were attempting to put together a game plan and a budget.  With so little having been prepared ahead of time, the official verdict was that it would take $50 million to pull off.

60.     *Planners also began to warn that it would not be up to the standard they had advertised; something they should have known and certainly could have discovered long before the marketing began.*

10

61.     The best idea, they said, would be to roll everyone's tickets over to 2018 and start planning for the next year immediately. They had a meeting with the executives of the Fyre Defendants to deliver the news, wherein a quote was stated, "Let's just do it and be legends, man." The PR Defendants went with it, as they had all along without conducting any reasonable due diligence.

62.     The budget was approved and the concert was to proceed.  Ja Rule even toasted that same evening, where it was known this festival would not be up to par, "To living like movie stars, partying like rock stars, and fucking like porn stars."

63.     Defendant, McFarland also did, or should have known about these issues, but chose to proceed.  This goes along with McFarland's past conduct as he has a "history of overpromising" in his previous business ventures. For example, after McFarland sold tickets to the musical *Hamilton* for $430, the tickets were cancelled at the last minute.  In a complaint to the Better Business Bureau, one customer seeking a refund reported getting no response to multiple queries over a month and a half.  These circumstances are the same.

64.     By April 11, 2017, the Fyre Defendants' website made several changes, one of which demonstrated a posted site map that the event was not going to, in fact, take place on a private island formerly owned by Pablo Escobar, but would instead be held on Great Exuma. This immediately raised red flags to the Plaintiff, Kenneth.

65.     In turn, Plaintiff, Kenneth sent the following email to the Fyre Defendants demanding a refund:

*To Whom It May Concern:*

*I am writing to express my concerns surrounding my order (order no. 47ced6fea763164a) and the event updates provided in the email below.  My*

*specific concerns surround the location of the event which now appears will be held on Great Exuma not on a "private island" as advertised.*

*As an individual that has traveled to the Exumas many times this deviation from the original marketing of the event inherently changes the value of the services that were offered at the time of purchase (purchase date 12/20/16). Specifically, Fyre Festival was advertised on your website, Facebook page, video marketing and press releases as "the unparalleled best in music, cuisine, design & hospitality __on a private island in the Exumas__". The inference that this "private island" was call "FYRE Cay" was mentioned dozens of times. That access to "FYRE Cay" was exclusive was woven throughout your marketing including; the necessity to arrange private flights which many of us waited months to finalize, only now to find out we will __not__ be flying to a private island as advertised and it will __not__ be on a private flight, but we will in fact be flying in to an international airport located on the main/non-exclusive island of Great Exuma. To reiterate, Great Exuma is accessed everyday by commercial airline carriers such as Delta and American Airlines and is by no means "private". Additionally, I believe the recent changes detailed in your email below and on your website indicate that you know this is not a "private island" experience, as you are now marketing it as "private land", accessed by a flight in to an international airport via 737 and motor coach. As mentioned these changes inherently change the value of the services being offered at the time of purchase. As a result I am requesting a __refund__.*

*In making this refund request I am filled with disappointment that the event you marketed is not going to take place. The Exumas are a wonderful place, especially when you have a chance to stay on one of the many private cays that make up the Exuma Archipelago. However, marketing the event to be held on a private island when in fact it will take place on a defunct landholding which is semi-industrial/manmade is extremely misleading. I could continue to dissect your marketing providing several other areas of concern which appear to be clear misrepresentations specifically designed to mislead prospective buyers but we both know the event is ultimately __not__ what is was marketing as. Furthermore, I have read your FAQs and are familiar with your "no refund" policy however such policies are generally void on the legal basis that "advertisement that is likely to mislead a reasonable consumer acting reasonably under the circumstances" amounts to false advertising and/or deceptive business practices for which damages can be rewarded.*

*I don't feel it is necessary to state my whole case as the facts I have pointed to should be enough to grant a refund. Furthermore I would appreciate a peaceful*

*and amicable resolution to this matter without the need for further escalation. I would appreciate a timely response in the next 72 hours regarding my refund request and I appreciate your attention to this matter. Thank you.*

A copy of the E-mail is attached hereto as Exhibit "E."

66.     The Fyre Defendants completely ignored the well-articulated request for a refund.

67.     After not receiving a response, coupled with almost daily updates regarding the progress being made (or not made) at the event, Plaintiffs, not wanting to lose the purchase price of their tickets, had no choice but to attempt to attend.

68.     However, Plaintiffs booked alternate sleeping arrangements at a hotel on the island due to the expected deficient lodging. Plaintiffs spent an additional $1,040.00 at Grand Isle Resort and Spa, a property close to the festival location.

69.     On April 28, 2017, Plaintiff, Kenneth boarded his flight to Miami to meet with some friends before the trip to Exuma. Plaintiff, Emily would fly down later in the week.

70.     At that exact time, news of the event was starting to break, which was even worse than Plaintiffs had expected.

71.     Yet, the Fyre Defendants were still emailing at that time that the event was proceeding forward, and that the kinks would be worked out.

72.     By the time Plaintiff, Kenneth landed in Miami, the event was shut down.

73.     Various posts on social media soon began to surface proving that Fyre Festival was nothing as marketed, advertised or represented by any of the Defendants:

13



William N. Finley IV
@WNFIV

Follow

This sums up Fyre Festival. #fyre #fyrefestival #fyrefest

9:54 PM - 27 Apr 2017

↩ ⟳ 423 ♥ 974



William N. Finley IV
@WNFIV

Follow

Expectation vs. Reality #fyre #fyrefestival

11:23 PM - 27 Apr 2017

↩ ⟳ 1,238 ♥ 3,052

74.     Other posts demonstrate that the advertised fine-dining was in reality nothing more than poor-quality cafeteria food:



75.     Still other posts demonstrate the plight of ticketholders stranded in Miami:





76.     Moreover, within a few hours after the actual festival began, the PR Defendants and those same Fyre Starters who scammed their followers into buying tickets, quickly started deleting their promotional posts.

77.     Ultimately, the entire festival was cancelled leaving not just the festival-goers in the Bahamas scrambling, but the second week attendees scrambling as well.  Considering all

16

attendees of the second weekend were required to be in Miami, all of the attendees of the second weekend (outside of those that may live in South Florida) had airline tickets and hotel lodging in Miami that were now useless.   This left Plaintiffs in a position of having to attempt to immediately adjust their schedules and travel arrangements based upon flights back to North Carolina, lodging requirements in South Florida, and other financial losses.

78.     The ticketholders, however, were not the only ones scrambling, as Ja Rule immediately posted that this "is NOT MY FAULT" in an attempt to distance himself from the situation.

### Public Relations Defendants Allegations

79.     As set forth above, Fyre Festival was nothing as advertised.

80.     The PR Defendants knew or should have known that their advertisements and promotions of Fyre Festival were false and likely to mislead consumers.   The campaign described above that they set in motion was, at bottom, a reckless disregard for reality and at worse, a blatant falsity.

81.     Indeed, the PR Defendants worked closely with the Fyre Defendants from the beginning.   Upon information and belief, the PR Defendants created the marketing, promotions and branding for the festival.

82.     The PR Defendants were well-aware that their advertisements and promotion of the Fyre Festival would reach and influence millions of people; that was their plan.   Yet it appears that they did not take any steps, let alone reasonable steps, to ensure that their promotional materials and marketing campaigns were accurate.

83.     Even basic due diligence would have revealed that the Fyre Festival could not possibly live up to the hype, as basic infrastructure was not even in place.   And, upon

information and belief, the PR Defendants did nothing to ensure that what they were marketing, and in turn what people were relying upon in purchasing tickets, was or even could be true.

84.     And, in spite of the clear warning signs leading up to the first weekend of the festival, the PR Defendants continued to promote and advertise in the same manner.

85.     Ultimately through the actions of the PR Defendants, and others, thousands of consumers who paid thousands of dollars to attend the Fyre Festival were blatantly (or recklessly) mislead.  This was certainly going to be a once in a lifetime experience, just not the experience represented by the Defendants.

### Refund Allegations

86.     In an attempt to pacify disgruntled ticket purchasers, on April 29, 2017, the Fyre Defendants issued an apology letter indicating that "[a]ll festival goers this year will be refunded in full."  A copy of the letter is attached hereto as Exhibit "F."

87.     On April 30, 2017, ticket purchasers were sent an email entitled "Fyre Festival Refund Information."  A copy of the email is attached hereto as Exhibit "G."

88.      The email contains a link where the consumer can "apply" for a refund—notably there is no guarantee that a refund will actually be provided.

89.     Ticket purchasers are then required to fill out a lengthy 18-question application form—which is the only way by which consumers can "apply" for a refund. A copy of the application form is attached hereto as Exhibit "H."

90.     Notably, the refund request form deceptively fails to advise ticket purchasers of their right to counsel, and it fails to inform that they may be entitled to damages beyond the face value of the ticket.   Specifically, ticket purchasers were required to make transportation

arrangements to Miami as prerequisite to concert attendance—and there is no indication that these expenses will be reimbursed.

91.     And while the form asks whether a consumer added funds to the RFID wristband, there is no indication that these funds will actually be included in the refund.  Indeed, the form notably does not ask any questions about how these funds were uploaded and it does not request any information about how to return these funds (i.e., no bank account information is requested).

92.     There is no indication whether claimants will ultimately be asked to sign a release of claims in order to receive the applied-for refund.

93.     Moreover, the refund request form is deceptive in that it fails to advise consumers which refund requests will be "approved" or by what criteria such approval determinations are made, leaving ticket purchasers unsure of whether they will actually receive any money.

94.     Further, once the application is submitted, nothing happens.  Ticket purchasers just receive a "Thank you page." They are not provided with a confirmation or request tracking number; as such, there is no way for consumers to track the status of their application.

95.     This refund "application" is nothing more than an attempt to save face.  The Defendants should have information on each purchaser, and should not require an "application" be completed simply to receive the refund.  In short, apparently the Defendants will keep any funds that have not had a refund applied for while at the same likely demand full releases.

96.     As for those individuals who elected to speak negatively about the Defendants on social media, they are now being threatened with legal action via cease and desist letters.  Specifically, if the social media comments were not taken down, the Defendants claim they could "incite violence, rioting, or civil unrest," with the caveat that if "someone innocent does get hurt as a result … Fyre Festival will hold you accountable and responsible."

19

97.     The vague and deceptive refund "application" is just another illusory promise by Defendants designed to mislead distressed ticketholders.

## CLASS ALLEGATIONS

98.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all other persons similarly situated as members of the proposed Class pursuant to the provisions of Fed. R. Civ. P. 23(a), (b) and (c)(5).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

99.     The proposed Classes are defined as follows:

### Nationwide Class

All persons or entities that purchased a Fyre Festival 2017 ticket or
package or that attended, or planned to attend, Fyre Festival 2017.

### North Carolina Subclass

All Fyre Festival 2017 ticketholders whose
tickets were purchased in North Carolina.

100.    Excluded from the Nationwide Class and Subclass are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.   Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

### Numerosity

101.    The members of the Class are so numerous that joinder of all members is impracticable.   While the exact number of Class members is unknown to Plaintiffs at this time,

and can only be ascertained through appropriate discovery, Plaintiffs believe that there are approximately 40,000 persons who purchased tickets to Fyre Festival.

Commonality and Predominance

102.   There are questions of law and fact common to the Class and predominate over any questions impacting only individual members of the class.  The common questions of law and fact include, without limitation, the following:

- Whether Defendants misrepresented material facts about Fyre Festival;
- Whether Defendants acted knowingly or recklessly in making such misrepresentations;
- Whether Defendants acted negligently in making such misrepresentations;
- Whether the Fyre Defendants breached their contracts with ticket purchasers;
- Whether Defendants engaged in an unfair and deceptive practice when making representations about Fyre Festival;
- Whether Defendants' commercial advertising or promotion, misrepresented the nature, characteristics, or qualities of Fyre Festival.

Typicality

103.   Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs, like all Class members, purchased tickets to Fyre Festival.  The representative Plaintiffs, like all Class members, were damaged by Defendants' misconduct in that they have suffered damages as a result of their purchase of the Fyre Festival tickets. Further, the factual bases of Defendants' misconduct are common to all Plaintiffs and represent a common thread of misconduct resulting in injury to all Class members.

Adequacy

104.   Plaintiffs are members of the Classes and will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have no interest that is adverse to the interests of the other Class Members.  Additionally, Plaintiffs have retained counsel with

21

substantial experience in complex commercial and class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes.

Superiority

105.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy at law. Moreover, Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation because class treatment will conserve the resources of the courts and the parties, and will promote consistency and efficiency of adjudication.

**MISCELLANEOUS**

106.    All conditions precedent to bringing this action have occurred or have been waived.

107.    Plaintiffs retained counsel and are obligated to pay counsel reasonable attorneys' fees and costs.

**COUNT I – FRAUDULENT MISREPRESENTATION**

**(against Fyre Defendants)**

108.    The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

109.    Plaintiffs bring this claim for themselves and on behalf of the Nationwide class.

110.    As set forth above, Defendants made several false representations of material fact with regard to Fyre Festival.

111.    Specifically, Defendants represented, *inter alia*, that: (1) the event would take place on a private island in the Exumas, Bahamas, (2) guests would take private jets from Miami

22

to the festival, (3) the event would include high-end cuisine, (4) the event would include complimentary WiFi, (5) that private contractors and the Bahamian army would be providing security for the event, and (6) the event would feature popular musicians and celebrities, (7) there would be sufficient medical treatment, (8) there would be ocean/swimming activities, and (9) there would be luxury lodging.

112.    These representations were false.

113.    Defendants knew these representations were false and intended that the representations would induce the consuming public, including Plaintiffs and the Class, to act on these representations and purchase tickets to Fyre Festival and incur other related expenses in order to attend the festival.

114.    In reliance on Defendants' representations, Plaintiffs and the Class purchased tickets to Fyre Festival and incurred a number of other expenses in order to attend the festival, including transportation and accommodation expenses.

115.     Plaintiffs and the Class were consequently injured when Fyre Festival was abruptly cancelled due to under-preparation and inadequate facilities.

116.    In addition to the expenses incurred by Plaintiffs and the Class in order to attend the festival, such as transportation and accommodation expenses, Plaintiffs and the Class also incurred damages in the form of expenses form of last-minute alternate accommodations necessitated by Fyre Festival's abrupt  cancellation and inadequate facilities.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(a)     enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, and punitive damages;

(b)     award Plaintiffs and the Class the cost of this action;

(c)      award Plaintiffs and the Class prejudgment interest;

(d)      award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT II – FRAUDULENT MISREPRESENTATION

## (against PR Defendants)

117.    The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

118.    Plaintiffs bring this claim for themselves and on behalf of the Nationwide class

119.    PR Defendants were responsible for managing Fyre Festival's marketing campaign, as well as creating and distributing its marketing and advertising materials.

120.    As set forth above, through the advertising and promotional materials, PR Defendants made several false representations of material fact with regard to Fyre Festival.

121.    Specifically, through their advertisement and promotional materials, PR Defendants represented, *inter alia*, that: (1) the event would take place on a private island in the Exumas, Bahamas, (2) guests would take private jets from Miami to the festival, (3) the event would include high-end cuisine, (4) the event would include complimentary WiFi, (5) that private contractors and the Bahamian army would be providing security for the event, and (6) the event would feature popular musicians and celebrities, (7) there would be sufficient medical treatment, (8) there would be ocean/swimming activities, and (9) there would be luxury lodging.

122.    These representations were false.

123.    PR Defendants knew or should have known that these representations made in the advertising and promotional materials were false and the PR Defendants intended that the representations would induce the consuming public, including Plaintiffs and the Class, to act on

24

these representations and purchase tickets to Fyre Festival and incur other related expenses in order to attend the festival.

124.    In reliance on the representations made in PR Defendants' advertising and promotional materials, Plaintiffs and the Class purchased tickets to Fyre Festival and incurred a number of other expenses in order to attend the festival, including transportation and accommodation expenses.

125.    Plaintiffs and the Class were consequently injured when Fyre Festival was abruptly cancelled due to under-preparation and inadequate facilities.

126.    In addition to the expenses incurred by Plaintiffs and the Class in order to attend the festival, such as transportation and accommodation expenses, Plaintiffs and the Class also incurred damages in the form of expenses form of last-minute alternate accommodations necessitated by Fyre Festival's abrupt  cancellation and inadequate facilities.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(e)    enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, and punitive damages;

(f)    award Plaintiffs and the Class the cost of this action;

(g)    award Plaintiffs and the Class prejudgment interest;

(h)    award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION
### (against Fyre Defendants)

127.    The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

128.     Plaintiffs bring this claim for themselves and on behalf of the Nationwide class.

129.     As set forth above, Defendants made several false representations of material fact with regard to Fyre Festival.

130.     Specifically, Defendants represented, *inter alia*, that: (1) the event would take place on a private island in the Exumas, Bahamas, (2) guests would take private jets from Miami to the festival, (3) the event would include high-end cuisine, (4) the event would include complimentary WiFi, (5) that private contractors and the Bahamian army would be providing security for the event, and (6) the event would feature popular musicians and celebrities, (7) there would be sufficient medical treatment, (8) there would be ocean/swimming activities, and (9) there would be luxury lodging

131.     These representations were false.

132.     Defendants were negligent in making the representations because they should have known the representations were false.

133.     Defendants intended for the representations to induce the consuming public, including Plaintiffs and the Class, to rely on these representations and purchase tickets to Fyre Festival and incur other related expenses in order to attend the festival.

134.     Plaintiffs and the Class justifiably relied on Defendants' misrepresentations and purchased tickets to Fyre Festival and incurred a number of other expenses in order to attend the festival, including transportation and accommodation expenses.

135.      Plaintiffs and the Class were consequently injured when Fyre Festival was abruptly cancelled due to under-preparation and inadequate facilities.

136.     In addition to the expenses incurred by Plaintiffs and the Class in order to attend the festival, such as transportation and accommodation expenses, Plaintiffs and the Class also

incurred damages in the form of expenses form of last-minute alternate accommodations necessitated by Fyre Festival's abrupt cancellation and inadequate facilities.

> **WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

> (i)    enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, and punitive damages;

> (j)    award Plaintiffs and the Class the cost of this action;

> (k)    award Plaintiffs and the Class prejudgment interest;

> (l)    award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (against PR Defendants)

137.    The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

138.    Plaintiffs bring this claim for themselves and on behalf of the Nationwide class

139.    PR Defendants were responsible for managing Fyre Festival's marketing campaign, as well as creating and distributing its marketing and advertising materials.

140.    As set forth above, through the advertising and promotional materials, PR Defendants made several false representations of material fact with regard to Fyre Festival.

141.    Specifically, through their advertisement and promotional materials, PR Defendants represented, *inter alia*, that: (1) the event would take place on a private island in the Exumas, Bahamas, (2) guests would take private jets from Miami to the festival, (3) the event would include high-end cuisine, (4) the event would include complimentary WiFi, (5) that private contractors and the Bahamian army would be providing security for the event, and (6) the

event would feature popular musicians and celebrities, (7) there would be sufficient medical treatment, (8) there would be ocean/swimming activities, and (9) there would be luxury lodging

142.     These representations were false.

143.     PR Defendants were negligent in making the representations in the advertising and promotional materials because they should have known the representations were false.

144.     PR Defendants intended for the representations to induce the consuming public, including Plaintiffs and the Class, to rely on these representations and purchase tickets to Fyre Festival and incur other related expenses in order to attend the festival.

145.     Plaintiffs and the Class justifiably relied on PR Defendants' misrepresentations and purchased tickets to Fyre Festival and incurred a number of other expenses in order to attend the festival, including transportation and accommodation expenses.

146.      Plaintiffs and the Class were consequently injured when Fyre Festival was abruptly cancelled due to under-preparation and inadequate facilities.

147.     In addition to the expenses incurred by Plaintiffs and the Class in order to attend the festival, such as transportation and accommodation expenses, Plaintiffs and the Class also incurred damages in the form of expenses form of last-minute alternate accommodations necessitated by Fyre Festival's abrupt  cancellation and inadequate facilities.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(m)     enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, and punitive damages;

(n)     award Plaintiffs and the Class the cost of this action;

(o)     award Plaintiffs and the Class prejudgment interest;

(p)    award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT V – FRAUD IN THE INDUCEMENT

### (against Fyre Defendants)

148.    The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

149.    Plaintiffs bring this claim for themselves and on behalf of the Nationwide class.

150.    As set forth above, Defendants made several false representations of material fact with regard to Fyre Festival.

151.    Specifically, Defendants represented, *inter alia*, that: (1) the event would take place on a private island in the Exumas, Bahamas, (2) guests would take private jets from Miami to the festival, (3) the event would include high-end cuisine, (4) the event would include complimentary WiFi, (5) that private contractors and the Bahamian army would be providing security for the event, and (6) the event would feature popular musicians and celebrities, (7) there would be sufficient medical treatment, (8) there would be ocean/swimming activities, and (9) there would be luxury lodging.

152.    These representations were false.

153.    Defendants knew or should have known the representations were false.

154.    Defendants intended for the representations to induce the consuming public, including Plaintiffs and the Class, to rely on these representations and purchase tickets to Fyre Festival and incur other related expenses in order to attend the festival.

155.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations and purchased tickets to Fyre Festival and incurred a number of other expenses in order to attend the festival, including transportation and accommodation expenses.

156.     Plaintiffs and the Class were consequently injured when Fyre Festival was abruptly cancelled due to under-preparation and inadequate facilities.

157.    In addition to the expenses incurred by Plaintiffs and the Class in order to attend the festival, such as transportation and accommodation expenses, Plaintiffs and the Class also incurred damages in the form of expenses form of last-minute alternate accommodations necessitated by Fyre Festival's abrupt  cancellation and inadequate facilities.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(q)     enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, and punitive damages;

(r)     award Plaintiffs and the Class the cost of this action;

(s)     award Plaintiffs and the Class prejudgment interest;

(t)     award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

### COUNT VI – FRAUD IN THE INDUCEMENT

### (against PR Defendants)

158.    The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

159.    Plaintiffs bring this claim for themselves and on behalf of the Nationwide class

160.    PR Defendants were responsible for managing Fyre Festival's marketing campaign, as well as creating and distributing its marketing and advertising materials.

30

161.   As set forth above, through the advertising and promotional materials, PR Defendants made several false representations of material fact with regard to Fyre Festival.

162.   Specifically, through their advertisement and promotional materials, PR Defendants represented, *inter alia*, that: (1) the event would take place on a private island in the Exumas, Bahamas, (2) guests would take private jets from Miami to the festival, (3) the event would include high-end cuisine, (4) the event would include complimentary WiFi, (5) that private contractors and the Bahamian army would be providing security for the event, and (6) the event would feature popular musicians and celebrities, (7) there would be sufficient medical treatment, (8) there would be ocean/swimming activities, and (9) there would be luxury lodging

163.   These representations were false.

164.   PR Defendants were negligent in making the representations in the advertising and promotional materials because they should have known the representations were false.

165.   PR Defendants intended for the representations to induce the consuming public, including Plaintiffs and the Class, to rely on these representations and purchase tickets to Fyre Festival and incur other related expenses in order to attend the festival.

166.   Plaintiffs and the Class justifiably relied on PR Defendants' misrepresentations and purchased tickets to Fyre Festival and incurred a number of other expenses in order to attend the festival, including transportation and accommodation expenses.

167.    Plaintiffs and the Class were consequently injured when Fyre Festival was abruptly cancelled due to under-preparation and inadequate facilities.

168.   In addition to the expenses incurred by Plaintiffs and the Class in order to attend the festival, such as transportation and accommodation expenses, Plaintiffs and the Class also

incurred damages in the form of expenses form of last-minute alternate accommodations necessitated by Fyre Festival's abrupt cancellation and inadequate facilities.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(u)     enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, and punitive damages;

(v)     award Plaintiffs and the Class the cost of this action;

(w)     award Plaintiffs and the Class prejudgment interest;

(x)     award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT VII – BREACH OF CONTRACT
### (on against Fyre Defendants)

169.     The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

170.     Plaintiffs bring this claim for themselves and on behalf of the Nationwide class.

171.     Plaintiffs and the Class purchased tickets to Fyre Festival, and thereby entered into a contract with Defendants to provide a luxury festival experience in exchange for payment.

172.     In consideration for Defendants' promise to provide a festival on a private island featuring popular musical talent, celebrities, high-end cuisine, lavish accommodations, and security, Plaintiffs and the Class paid Defendants substantial sums of money.

173.     Defendants breached the contract by having the event take place on Great Exuma, instead of a private island, by failing to provide the promised musical acts and celebrities, by failing to provide high-end cuisine, lavish accommodations, security, and by ultimately cancelling the event.

174. After Defendants failed to preform, Plaintiffs and the Class incurred substantial expenses to secure alternate accommodations, travel arrangements and suffered other damages.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(a)     enter judgement against Defendants for damages including compensatory damages, consequential damages, special damages, restitution damages, and reliance damages;

(b)     award Plaintiffs and the Class the cost of this action;

(c)     award Plaintiffs and the Class prejudgment interest;

(d)     award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT VIII – VIOLATION OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, § 501.201, et seq. Fla. Stat.

### (against all Defendants)

175. The allegations contained in paragraph 1-107 are hereby re-alleged as if fully set forth herein.

176. Plaintiffs bring this claim for themselves and on behalf of the Nationwide class.

177. Plaintiffs and the Class qualify as "consumer[s]" as defined in § 501.203 Fla. Stat.

178. The subject transactions qualify as "trade or commerce" as defined in § 501.203 Fla. Stat.

179. In violation of § 501.204 Fla. Stat., Defendants engaged in deceptive and unfair trade practices, including unconscionable acts or practices, by falsely representing in their advertising and promotional materials that they would provide consumers with a festival on a private island featuring popular musical talent, celebrities, high-end cuisine, lavish accommodations, and security.

33

180.    Defendants continued to make such representations despite knowing that they could not deliver as promised.

181.    Defendants' conduct constitutes a deceptive practice because it was likely to mislead consumers.

182.    Defendants' conduct constitutes an unfair practice because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

183.    Defendants' false and misleading representations in their advertising and promotional materials caused substantial injuries to Plaintiffs and the Class.

184.    As a result of Defendants' unfair and deceptive practices, Plaintiffs and the Class have suffered substantial actual damages.

**WHEREFORE**, Plaintiffs and the Class respectfully request the Court:

(a)     enter judgement against Defendants;

(b)     award Plaintiffs and the Class their actual damages pursuant to § 501.211;

(c)     award Plaintiffs and the Class injunctive relief pursuant to § 501.211;

(d)     award Plaintiffs and the Class their attorneys' fees and costs pursuant to § 501.2105;

(e)     award Plaintiffs and the Class prejudgment interest;

(f)     award Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## COUNT IX – VIOLATION OF N.C. Gen. Stat. § 75-1.1

### (against all Defendants)

185.    The allegations contained in paragraph 1-107 re hereby re-alleged as if fully set forth herein.

186.    Plaintiffs bring this claim for themselves and on behalf of the North Carolina Class.

187.    In violation of N.C. Gen. Stat. § 75-1.1, Defendants engaged in an unfair and deceptive act or practice by falsely representing in their advertising and promotional materials that they would provide consumers with a festival on a private island featuring popular musical talent, celebrities, high-end cuisine, lavish accommodations, and security, when in fact, no such services were provided.

188.    Defendants' conduct is unfair and deceptive because it has the capacity or tendency to deceive the average consumer, and in fact, did deceive Plaintiffs and the Class into believing that Fyre Festival would take place on a private island and feature popular musical talent, celebrities, high-end cuisine, lavish accommodations, and security.

189.    Defendants' conduct was in connection with a business activity; therefore, Defendants' conduct was in or affected commerce.

190.    Defendants' unfair and deceptive practices proximately caused Plaintiffs and the Class have suffered substantial actual damages.

191.    Moreover, Defendants' willfully engaged in the act or practice, and there was an unwarranted refusal by Defendants to fully resolve the matter.

WHEREFORE, Plaintiffs and the Class respectfully request the Court:

(a)    enter judgement against Defendants;

(b)       award Plaintiffs and the Class their actual damages;

(c)       award Plaintiffs and the Class treble damages pursuant to N.C. Gen. Stat. § 75-16

(d)       award Plaintiffs and the Class their attorneys' fees and costs pursuant to N.C.

Gen. Stat. § 75-16.1;

(e)       award Plaintiffs and the Class prejudgment interest;

(f)       award Plaintiffs and the Class such other and further relief as this Court deems

just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiffs and the Class hereby demand trial by jury on all issues so triable.

DATED: May 5, 2017

Respectfully Submitted,

GREENSPOON MARDER, P.A.

By: */s/ Jeffrey Backman*
JEFFREY A. BACKMAN
(Fla. Bar. No. 662501)
Jeffrey.Backman@gmlaw.com
RACHEL E. WALKER
(Fla. Bar No. 0111802)
Rachel.walker@gmlaw.com
GREENSPOON MARDER, P.A.
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
954-491-1120 (telephone)
954-343-6958 (facsimile)

*and*

LAW OFFICES OF LEVY & LEVY, P.A.

By: */s/ Chad Levy*
CHAD E. LEVY, ESQ.

36

(Fla. Bar. No. 0851701)
Email: chad@levylevylaw.com
Service Email: assistant@levylevylaw.com
1000 Sawgrass Corporate Parkway, Suite 588
Sunrise, Florida 33323
Telephone: (954) 763-5722
Facsimile:  (954) 763-5723