IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.

KENNETH REEL and EMILY REEL,
individually and as the representatives
of a class of similarly-situated persons,

            Plaintiff,

v.

BILLY MCFARLAND, an individual;
JEFFREY ATKINS a/k/a/ JA RULE, an
individual; FYRE MEDIA, INC., a
Delaware corporation; FYRE
FESTIVAL, LLC, a Delaware limited
liability company; 42WEST, LLC,
a Delaware limited liability company;
MATTE PROJECTS, LLC a New York
limited liability company; DOES 1-50,

            Defendants.

_____/

## MOTION FOR AN ORDER LIMITING DEFENDANTS' COMMUNICATIONS WITH PLAINTIFFS AND POTENTIAL CLASS MEMBERS AND FOR OTHER RELIEF PURSUANT TO FED. R. CIV. P. 23(d)

### (Oral Argument Requested)

Plaintiffs Kenneth Reel and Emily Reel, for themselves and on behalf of the potential class, pursuant to Fed. R. Civ. P. 23(d), move for a preliminary injunction to enjoin Defendants from improperly communicating with potential class members, compelling Defendants to issue corrective notices to potential class members in connection with any misleading communications that have already occurred, and invalidating any releases Defendants may have obtained in connection with those improper communications.

1

30481763v2

## I.     INTRODUCTION

Defendants have engaged in widespread fraud, breached contracts, and violated a litany of consumer protection laws in connection with the event known as "Fyre Festival."  In a blatant attempt to avoid the massive liability resulting from their well-documented misconduct, Defendants "announced" that they will issue refunds to ticketholders.   But it's not true. Defendants are not actually issuing refunds—instead they have provided potential class members with a "link" to an "application form" so the potential class members can *apply* for (or request) a refund.  Notably, there is *no* guarantee that a refund will actually be provided, and there is no indication as to what this "refund" will entail; will it be a full and complete refund of the entire ticket price?   Will there be any reimbursement for additional expenses incurred by class members beyond the face value of the ticket (such as airline tickets to get to Miami, hotel expenses, time off from work, and other damages incurred by potential class members)?  Will individuals who funded their "cashless" Fyre spending accounts have those funds returned?   So many unknowns exist.

The illusory promise of an unspecified "refund" subject to Defendants' discretionary approval is designed to mislead the potential class into thinking that they will, in fact, be fully compensated for the damages incurred as a result of Defendants' misconduct, and to prevent potential class members from exercising their litigation rights.   Indeed, the refund application, with upwards of 20 questions, is utterly void of any explanation of the potential classes' right to counsel—in fact, there is no disclosure informing the putative class members of the pending class actions whatsoever; nor is there any information advising the putative class members that they do, in fact, have rights beyond just accepting the supposed refund.   Accordingly, Plaintiffs are deeply concerned about the nature and content of the communications being sent to potential

class members about the supposed "refund" and about their litigation rights.  Of course, potential class members are free to determine what course of action best serves their interests; however, they are entitled to full disclosure of their rights and the ramifications of the waiver of any such rights.  They are also entitled to the opportunity for all of the facts relating to Defendants' misconduct to be brought to light – something Defendants hope to avoid.

Therefore, Plaintiffs, for themselves and on behalf of the potential class, seek an order (1) prohibiting Defendants from making any future misleading communications to potential class members; (2) requiring Defendants to issue corrective notices that clearly advise potential class members of their litigation rights, a copy of which is to be provided to the Court or to Plaintiffs prior to sending to the potential class; (3) invalidating any releases defendants obtained in connection with their communications with potential class members, and (4) compelling Defendants to disclose the names, email address and comments pertaining to communications with potential class members about the "refunds."

The requested order is reasonable and designed to protect potential class members from misleading communications that seek to unfairly deprive them of their legal rights.   Simply put, Defendants should not be allowed to engage in any conduct or communications that would cause potential class members to waive their claims and remedies without providing the putative class members all appropriate information necessary to make informed decisions.

## II.    STATEMENT OF FACTS

Defendants falsely promoted Fyre Festival as a high-end, exclusive music festival on a private island featuring "the best in food, art, music and adventure."  In reality, the event fell woefully short of what was advertised, and collapsed in what has been described as a "slow-motion fiasco." Instead of world-class cuisine and entertainment, concert-goers found themselves

30481763v2

without adequate food, water, shelter, and basic medical care.  Still others in route to the event found themselves stranded in Miami unsure of how to proceed or of what was occurring on the island.  The calamity was further complicated by the fact that Fyre Festival was organized as a cashless event, whereby attendees uploaded funds to an electronic wristband for use at the festival instead of cash.  As a result, many attendees seeking to flee the event were unable to secure basic transportation from local taxis or busses, which accept only cash.

To make matters worse, these uploaded funds have not yet been returned to ticket purchasers—and the "refund application" provided by Defendants makes no mention of how— *or if*—these funds will ever be returned to the putative class.    Defendants have been aware for months that the festival was dangerously under-prepared and under-equipped.  Yet, they continued to promote the event and sell ticket packages anyway.  In fact, Defendants informed performers and celebrities that the festival was ill-equipped and warned them not to attend— ticketholders were given no such courtesy.  As a result, thousands of ticketholders in route to the vacation of a lifetime found themselves stranded when the event was abruptly cancelled due to inadequate preparation.

Not only did these ticketholders shell out thousands of dollars to purchase tickets to the event, but in order to attend the event, they were required to make transportation arrangements to Miami, where festivalgoers would then board what was supposed to be a private plane to the purported private island in the Exumas.  Many ticket purchasers, like the Plaintiffs here, planned their entire vacation around this festival.  They didn't just spend nearly $5,000 on tickets, but they took time off of work, booked flights and hotels, and ultimately wasted thousands of dollars beyond the ticket prices as a result of Defendant's fraud. Once the event was abruptly cancelled, ticketholders were left to fend for themselves.

4

Recognizing the disaster that was Fyre Festival, on April 29, 2017, Defendants issued an apology letter indicating that "[a]ll festival goers this year will be refunded in full."  A copy of the letter is attached hereto as Exhibit "A."  On April 30, 2017, ticket purchasers were sent an email entitled "Fyre Festival Refund Information."  A copy of the email is attached hereto as Exhibit "B."  The email contains a link where the consumer can "apply" for a refund—notably there is *no* guarantee that a refund will actually be provided.  Ticket purchasers are then required to fill out a lengthy multi-question application form—which is the only way by which consumers can "apply" for a refund. A copy of the application form is attached hereto as Exhibit "C."

Notably, the refund request form deceptively fails to advise ticket purchasers of their right to counsel—nor is there any mention of the pending class actions. Simply put, the refund request form fails to adequately inform the potential class of their litigation rights, of which there are many.

Moreover, the vague form fails to inform the potential class that they may be entitled to damages beyond the face value of the ticket, and there is nothing explaining what the "refund" might entail.  Specifically, ticket purchasers were required to make transportation arrangements to Miami as prerequisite to concert attendance—and there is no indication that these expenses will be reimbursed.  And while the form asks whether a consumer added funds to the RFID wristband, there is no indication that these funds will actually be included in the refund.  Indeed, the form notably does not ask any questions about how these funds were uploaded, and it does not request any information about how to return these funds (i.e., no bank account information is requested).  And the fraud that occurred here could subject Defendants to punitive damages – all of which would be recoverable by the putative class.  Of course it is these additional damages that Defendants hope to avoid—as well as the negative consequences of all of the real facts

5

surrounding Fyre Festival coming to light through discovery.   Hence the rush to reach ticketholders.

The refund request form is utterly void of detail and includes no explanation as what hoops ticketholders may ultimately be asked to jump through in order to ascertain the purported refund.   Importantly, there is no indication whether claimants will ultimately be asked to sign a release of claims in order to receive the applied-for refund—nor is it clear if Defendants have already received such waivers from potential class members.

Moreover, the refund request form is deceptive in that it fails to advise consumers which refund requests will be "approved" or by what criteria such approval determinations are made, leaving ticket purchasers unsure of whether they will actually receive any money.   By way of example, once the application is submitted, nothing happens.   Ticket purchasers just receive a "Thank you" page. They are not provided with a confirmation or request tracking number; as such, there is no way for consumers to track the status of their application or even to know if their "request" has been accepted.   Moreover, there is no instruction on what to do if the wrong amount (or nothing) is ever refunded.   The vague and deceptive refund "application" is just another illusory promise by Defendants designed to mislead distressed ticketholders, and fails to adequately apprise them of their legal rights.

### III.    LEGAL STANDARD

Under Fed. R. Civ. P. 23(d)(1), "[i]n conducting an action under this rule, the court may issue orders that:

**(A)**   determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

**(B)**   require--*to protect class members and fairly conduct the action*--giving appropriate notice to some or all class members of:

6

      **(i)** *any step in the action*;
      **(ii)** the proposed extent of the judgment; or
      **(iii)** *the members' opportunity to* signify whether they consider the representation fair and adequate, to intervene and *present claims or defenses, or to otherwise come into the action*;

  **(C)** *impose conditions on the representative parties or on intervenors*;

  **(D)** require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

  **(E)** *deal with similar procedural matters*.

Fed. R. Civ. P. 23(emphasis added). "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "Indeed, the Court bears the responsibility under Rule 23(d) to preserve the integrity of the class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 560 (S.D. Fla. 2008). "[T]he purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-CV-04324- JST, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) (quoting *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826EMC, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014)). "For this reason, Rule 23(d), Fed.R.Civ.P., provides the Court with the authority to issue orders to protect class members, impose conditions on the representative parties, and deal with similar procedural matters." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 560 (S.D. Fla. 2008). Moreover, "[t]he court's duty to supervise communications with potential class members exists even before a class is certified." *Cheverez v. Plains all Am. Pipeline, LP*, No. CV15-4113 PSG (JEMX), 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016) (citing *In re Oil Spill by the Oil Rig 'Deepwater Horizon ' in the Gulf of Mexico on Apr. 20, 2010,* No. 10-md-02179, 2011 WL 323866, at *2. (E.D. La. Feb. 2, 2011)).

30481763v2

## IV.    ARGUMENT

### A.  Defendants Should Be Enjoined From Further Misleading Communications With Class Members

Communications that have been found to violate Rule 23 include misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel. *See Jones,* 250 F.R.D. at 561.  "Courts have also found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action are misleading communications which the court may limit." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014); *see also Friedman v. Intervet Inc.,* 730 F. Supp. 2d 758, 763 (N.D. Ohio 2010) (finding that a communication procuring a settlement was misleading, where the defendant did not inform potential class members that they were possibly giving up participation in the pending potential class action).

In determining whether to issue an order protecting class members, courts in this District have applied a two-part test:  "First, a communication must have occurred or be threatened to occur." *Id.* at 561. "Next, the form of communication at issue must be abusive in that 'it threatens the proper functioning of the litigation.'" *Id.* (quoting *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.,* 214 F.R.D. 696, 698 (S.D. Ala. 2003)).

Here, both elements are satisfied.  First, there is no doubt that misleading communication has occurred and that additional misleading communication is threatened to occur.  As explained above, Defendants issued an apology letter and email with the refund link to potential class members.   None of these communications fairly apprise potential class members of their

8

litigation rights or explain what refunds might be issued.  Moreover, the refund request is subject to Defendants' unspecified and discretionary "approval"; thus, additional communications with potential class members regarding so-called "approved" requests are likely to occur.

Second, Defendants' communications threaten the proper functioning of the pending litigation.  Indeed, the vague "refund application"—*with no actual refund guarantee*—misleads potential class members and may induce them into making emotional, time-pressured decisions to waive their rights to participate in the pending action.  In particular, the refund application gives no specifics as to what—if anything—will actually be refunded; nor does it provide consumers with any insight as to what conditions (such as a release of claims) Defendants may attempt to impose in order to "approve" a given refund request.  By giving no specifics and failing to inform consumers of their litigation rights, potential class members may be lulled into opting out of the class under the erroneous belief that Defendants will fully reimburse them for their damages once the refund request is "approved."  Indeed, courts have found abusive litigation tactics to exist where, as here, "the opposing party's communications simply fail to mention the class actions, resulting in the potential for unknowing waivers by the potential class members due to a lack of information." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 929 (N.D. Ill. 2013).  Such "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of onesided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could be irreparable." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985).

As such, Defendants' communications and future communications threaten the proper functioning of the pending litigation, and they should be enjoined from making such statements.

30481763v2

### B.  Defendants Should Be Required to Issue Corrective Notices That Clearly Advise Potential Class Members of their Litigation Rights

"Courts may require corrective notices to remedy improper communications already made." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014)*; Goody v. Jefferson County,* 2010 WL 3834025, *1, *3 (D. Idaho 2010) (finding corrective notice was necessary "to ensure that all potential plaintiffs know about their right to join the collective action," based on the plaintiff's confusion about whether he could join the suit, following a letter and check sent by the defendant, which stated the payment was to ensure the plaintiff had been "adequately paid" in "compliance with all State and federal laws").

Here, as explained above, Defendants have already communicated with potential class members and failed to include any mention of the class members' rights to participate in pending class actions or even to file their own lawsuits.  Absent corrective notices, potential class members may unknowingly waive their rights due to a lack of information.  Further, due to the vague language of the refund link, potential class members may be confused as to whether their "application" for a refund precludes their participation in the class.  *See Goody,* 2010 WL 3834025, *1.  As such, corrective notices are necessary to ensure that potential class members are aware of all rights and make informed decisions.

### C.  Any Releases Defendants Obtained in Connection with Their Communications with Potential Class Members Should Be Invalidated

At this point, it is unclear if Defendants have actually obtained releases from potential class members in exchange for a refund.  However, to the extent such releases were obtained without fully informing potential class members of their rights, such releases should be invalidated.  Indeed, courts may invalidate releases when, as possibly here, "[d]efendants obtained them by denying Plaintiffs information and representation to which they were entitled."

10

... 

*Cheverez v. Plains all Am. Pipeline, LP*, No. CV15-4113 PSG (JEMX), 2016 WL 861107, at *7 (C.D. Cal. Mar. 3, 2016); *see also Gonzalez v. Preferred Freezer Serv's LBF, LLC*, CV12-03467-ODW (FMOx), 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012) (noting that while settlements are "usually encouraged," "public policy demands that potential plaintiffs receive appropriate notice before entering into any release agreement"); *see also Camp v. Alexander*, 300 F.R.D. 617, 626 (N.D. Cal. 2014) (invalidating opt-out declarations obtained *ex parte* before class certification and requiring corrective notice because "obtaining opt-out forms ex parte at this stage of the litigation – before a class has been certified by the Court – unquestionably frustrates the purpose of Rule 23") (citations and internal quotation marks omitted); *Friedman*, 730 F. Supp. 2d at 767 n. 8 (noting that nullifying releases can be appropriate where the number of releases obtained under misleading circumstances is capable of frustrating the numerosity requirement of class actions).

Accordingly, to the extent any releases have been obtained, they should be invalidated by this Court.

### D. Defendants Should Be Compelled to Disclose the Names, Email Addresses and Comments Pertaining to Communications With the Potential Class About the Refunds

Further, to ensure the Court can properly monitor Defendants' communications with the potential class, Defendants should be compelled to disclose the names, email addresses and comments pertaining to their communications with potential class members.

### V.     CONCLUSION

For the foregoing reasons, the Court should issue an Order under Fed. R. Civ. P. 23(d) to protect the potential class that (1) prohibits Defendants from making any future misleading communications to potential class members; (2) requires Defendants to issue corrective notices

that clearly advise potential class members of their litigation rights, a copy of which is to be provided to the Court or to Plaintiffs prior to sending to the potential class; (3) invalidates any releases Defendants obtained in connection with their communications with potential class members, and (4) compels Defendants to disclose the names, email address and comments pertaining to communications with potential class members about the "refunds."

DATED: May 5, 2017

GREENSPOON MARDER, P.A.

By: */s/ Jeffrey Backman*_____
JEFFREY A. BACKMAN
(Fla. Bar. No. 662501)
Jeffrey.Backman@gmlaw.com
RACHEL E. WALKER
(Fla. Bar No 0111802)
Rachel.Walker@gmlaw.com
GREENSPOON MARDER, P.A.
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
954-491-1120 (telephone)
954-343-6958 (facsimile)

*and*

LAW OFFICES OF LEVY & LEVY, P.A.

By: */s/ Chad Levy*_____
CHAD E. LEVY, ESQ.
(Fla. Bar. No. 0851701)
Email: chad@levylevylaw.com
Service Email: assistant@levylevylaw.com
1000 Sawgrass Corporate Parkway, Suite 588
Sunrise, Florida 33323
Telephone: (954) 763-5722
Facsimile:  (954) 763-5723

## REQUEST FOR HEARING

In accordance with Local Civil Rule 7.1(b)(2), Plaintiffs and the Class respectfully requests oral argument on this Motion.  As grounds for this request, Plaintiffs and the Class submit that the Motion raises urgent and complex issues, all of which cannot be fully addressed in this Motion. Oral argument will provide the opportunity to respond to questions that may arise regarding these issues.  It is estimated that the argument for both sides should take no longer than sixty (60) minutes.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2017, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  Any party not registered with the CM/ECF system was served with this Motion served via process server at the address listed below:

By: /s/*Chad Levy*

BILLY MCFARLAND
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

JEFFREY ATKINS a/k/a/ JA RULE
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

FYRE MEDIA, INC.
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

30481763v2

FYRE FESTIVAL, LLC
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

42WEST, LLC,
c/o Corporation Service Company
2711 Centerville Rd Suite 400
Wilmington, De 19808

MATTE PROJECTS, LLC
c/o Max Pollack & Brett Kincaid, Partners
155 Powers Street #2D
Brooklyn, New York, 11211

14

30481763v2